**SUNSTREAM JET EXPRESS, INC., a Delaware Corporation, Plaintiff,**

v.

**INTERNATIONAL AIR SERVICE CO., LTD., a California Corporation, Defendant.**

**No. 81 C 1436.**

United States District Court, N. D. Illinois, E. D.

May 1, 1981.

---

Robert E. Adamowski, Adamowski, Newey & Adamowski, Chicago, Ill., for plaintiff.

Christopher A. Hansen, John H. Anderson, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

This suit seeking injunctive relief arises out of an alleged breach by the defendant of a lease agreement entered into with plaintiff. Presently before the court is the defendant's motion to dismiss for lack of personal jurisdiction over the defendant or, in the alternative, for transfer of this case to the Northern District of California pursuant to 28 U.S.C. § 1404.

Because this court must decide the defendant's motion solely on the basis of written materials, plaintiff need only show a *prima facie* case for personal jurisdiction and is entitled to the acceptance of all undenied factual assertions and the resolution of all factual disputes in its favor. *Neiman v. Rudolph Wolff & Co., Ltd.,* 619 F.2d 1189 (7th Cir. 1980).

The affidavit of the defendant's executive vice-president presents the following facts. The defendant, International Air Service Company, Ltd. (IASCO) is a California corporation with its offices located in Burlingame, California. IASCO maintains no office, telephone listing, or employees in Illinois, and does not conduct any business in Illinois, nor has it done any business in Illinois for many years. IASCO is not registered or qualified to do business in Illinois,

nor does it have an agent in Illinois to accept service of process.

The complaint alleges that the defendant's removal and replacement of two jet engines from the airframe of the aircraft leased to it by the plaintiff without repair of the original engines constitutes a breach of specific provisions of the lease agreement. The lease itself was entered into by execution of a written agreement prepared by defendant in California and accepted and executed in Illinois by the plaintiff's president, Norman Lively.

In November of 1978 and prior to the execution of the written agreement, the plaintiff's president contacted defendant's offices by telephone in order to solicit IASCO's services in maintaining and operating the aircraft in question in a chartered cargo run for Emery Air Freight Corporation. After a number of telephone calls regarding this proposal, Lively had the plane flown to California for inspection by IASCO and for further personal discussions regarding IASCO's management of the plane. As a result of these discussions, IASCO later agreed to manage the aircraft.

Subsequent to this management agreement, Lively suggested by telephone to IASCO that IASCO deal directly with Emery by leasing the plane from plaintiff. Discussions also took place with respect to IASCO assisting plaintiff in obtaining financing for the plane in California.

After further numerous discussions on the telephone and in person at the Paris, France Air Show in 1979, a verbal understanding was reached as to IASCO's lease of the plane from plaintiff. The written lease was prepared by IASCO in accord with the parties' negotiations and executed by IASCO in California. It was delivered by IASCO to plaintiff's offices in Illinois where it was executed by plaintiff's president.

The lease calls for plaintiff to make delivery of the plane to California. The parties also agreed that the defendant would provide the crew for the actual flight from Illinois to California. The defendant did in fact provide the crew, and the crew flew the plane from DuPage County Airport to California. The plaintiff paid for all expenses of delivery except for the crew. Since October, 1979 the defendant has made $50,000 monthly rental payments to the plaintiff "at the office of the lessor" in Illinois pursuant to the lease's terms. The lease specifically provides that Illinois law will govern the construction of the lease and the rights and duties of the parties thereunder. The lease also provides that the lessee shall provide copies of all maintenance records to the lessor every 60 days and that the lessee shall provide copies of the engine, aircraft and flight logs to the lessor every 180 days. The lease also called for the lessee to provide the lessor with certificates of insurance and receipts for licensing fees required in connection with the aircraft's operation. Finally, the lease requires the lessee to return the aircraft to DuPage County Airport upon termination or expiration of the lease and to deliver at that time a number of documents including logs, maintenance reports and other records.

Although the facts present a close case, this court believes that the minimum contacts with Illinois necessary to sustain jurisdiction over the defendant are present in this case. *See International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The defendant made the offer to lease by sending the written agreement to the plaintiff in Illinois to be executed by plaintiff in Illinois and thereby entered into a contract which explicitly invoked the protections of Illinois law and which required ongoing contacts over a period of two years in Illinois. These contacts included delivery of monthly rental payments in excess of one million dollars and delivery of documents regarding maintenance of the aircraft, insurance and license fees to the plaintiff's office.

All of the defendant's contacts with Illinois took place in connection with the specific agreement at issue in this suit. In addition, defendant's agents actually took physical control of the plane's operation and

operated it in Illinois pursuant to the agreement of the parties.[1]

In *Wisconsin Electrical Manufacturing Co. v. Pennant Products, Inc.*, 619 F.2d 676 (7th Cir. 1980), as in this case, the only contacts of the non-resident defendant were related to the specific agreement upon which the suit was based. The Court of Appeals stated that

> The significant contacts of the out-of-state buyer with the forum state . . . are visits by the buyer's agents to Wisconsin in connection with the business on which the claim is based. There were two visits
> . . .

*Id.* at 677.

As in *Wisconsin Electrical Manufacturing* and unlike *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir. 1979), *cert. denied*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980), the requirement of *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958) that "there be some act by which defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws" is satisfied. When defendant's agents operated the aircraft in Illinois pursuant to their agreement with the plaintiff, an agreement which itself invoked the benefits of Illinois law, the defendant became protected by Illinois law on any questions concerning risk of loss, agency, indemnification and other questions that could have arisen out of its agents' operation of the plane in this state. The direct act of operation of the aircraft in this state, and the indirect acts of entering into the agreement in Illinois, and performing its promise to make monthly payments and regular delivery of documents to Illinois all relate to the formation and performance of the lease agreement and were "significant in the formation of the contract and [IASCO's] efforts to have it satisfacto-

rily performed." *Wisconsin Electrical Manufacturing Co. v. Pennant Products, Inc.*, 619 F.2d at 678.

This is not a case involving mere telephone conferences and correspondence between the parties incidental to a lease agreement wholly performed outside of Illinois. Thus, *Geldermann & Co., Inc. v. Dissault*, 384 F.Supp. 566 (N.D.Ill.1974) and *Geneva Industries, Inc. v. Copeland Construction Corp.*, 312 F.Supp. 186 (N.D.Ill. 1970) do not persuade this court that plaintiff has failed to show facts sufficient to establish personal jurisdiction. In *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175 (9th Cir. 1980), the court stated:

> Even a single contact, however, may support personal jurisdiction over a defendant in an action arising out of that particular contact. A foreign act having an effect in the forum may satisfy the minimum contact requirement. *McGee v. International Life Insurance*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). But in each such case the defendant must have done some act by which it purposefully avails itself of the benefits and protections of forum law. *Kulko v. Superior Court*, 436 U.S. 84, 93–94, 98 S.Ct. 1690, 1697–1698, 56 L.Ed.2d 132 (1978).

Although there are factual similarities between this case and *Nu-Way Systems v. Belmont Marketing, Inc.*, 635 F.2d 617 (7th Cir. 1980), *Nu-Way Systems* is distinguishable from this case in a number of respects. In *Nu-Way Systems* the contract sued upon had been solicited, drafted, negotiated, and entered into outside of the forum state. In this case, it has been established that the lease was actually entered into in Illinois. Moreover, in *Nu-Way Systems* the payments made pursuant to the contract were not made in the forum state. In the case at bar, the performance of this non-resident's promise to make monthly payments pursu-

---

1. In *Wisconsin Electrical Manufacturing Co., Inc. v. Pennant Products, Inc.*, 619 F.2d 676, 678 n.9 (7th Cir. 1980), the court stated:

    We attach little, if any, weight to the contract term specifying that shipment be F.O.B. to plaintiff's plant in New Berlin, Wisconsin.

In this case, the fact that the parties' agreement provides for delivery in California is outweighed by defendant's agents' actual operation of the plane in Illinois.

ant to the lease took place "at the office of the lessor" in Illinois and the defendant's agents in fact took control of the plane in Illinois, although delivery for purposes of risk of loss did not take place until the plane arrived in California.

In sum, it is this court's opinion that the requirements of the due process clause have been met by plaintiff in utilizing the Illinois long-arm statute, Ill.Rev.Stat. ch. 110 § 17(1)(a) as authorized by Rule 4, Fed.R. Civ.P.

Finally, in considering the defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a), this court is not persuaded that the convenience of the parties and the witnesses, or the interest of justice, require transfer of this case to California. We note the following pertinent facts. Construction of the lease and the determination of the obligations of the parties will be controlled by Illinois law. The convenience of the parties does not favor the defendant, and the convenience of the defendant's California witnesses is counterbalanced by considerations of the expense to those witnesses employed by Emery Air Freight in Connecticut of appearing for trial in California as opposed to Chicago. A transfer would not have an effect on possible witnesses residing in Kansas. Finally, no showing has been made that defendant's employee witnesses residing in California would not testify in Chicago at the direction of their employer.

Thus, given the lack of a clear showing favoring trial in California, this court believes that the weight to be accorded to the plaintiff's choice of forum, the convenience of the plaintiff and its witnesses, and the fact that Illinois law will apply to the issues in this case justifies a denial of defendant's motion to transfer.

In conclusion, for the reasons stated above, the defendant's motion to dismiss or, in the alternative, to transfer the case to the Northern District of California is denied.

IT IS SO ORDERED.